# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| R2 SOLUTIONS LLC, | § | |
| | § | |
| *Plaintiff,* | § | Civil Action No. 4:22-cv-00353 |
| | § | Judge Mazzant |
| v. | § | |
| | § | |
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff R2 Solutions LLC's Motion to Compel Discovery (Dkt. #34). Having considered the motion, the response, and the applicable law, the Court finds that Plaintiff's Motion to Compel Discovery (Dkt. #34) should be **GRANTED in part** and **DENIED in part**.

### BACKGROUND

This discovery dispute arises in the context of a patent infringement action. Plaintiff R2 Solutions LLC ("R2") accuses Defendant American Airlines, Inc. ("American") of infringing U.S. Patent Nos. 8,190,610 ("the '610 patent"), 8,341,157 ("the '157 patent"), and 7,698,329 ("the '329 patent") (collectively, the "Patents-in-Suit") (Dkt. #1 ¶¶ 46–79).[1] At a high level, R2 alleges that American infringes the Patents-in-Suit through two categories of products and services: (1) the search functionalities incorporated into American's web platform and its mobile application (the "Accused Search Systems"), which allegedly infringe the '157 patent and the '329 patent and (2) American's data analytics systems (the "Accused Data Analytics Systems"), which allegedly infringe '610 patent (Dkt. #1 ¶ 6).

---

[1] R2 initially asserted U.S. Patent No. 8,209,317 ("the '317 patent") (Dkt. #1 ¶ 80). R2 has since withdrawn its claims for infringement of the '317 patent (Dkt. #53).

In its infringement contentions, R2 set out its allegations regarding the Accused Data Analytics Systems:

> As to the '610 patent, the Accused Instrumentalities include systems, services, processes, methods, acts, components (hardware and/or software), and/or other instrumentalities that process big data and/or data analytics. The "Accused Instrumentalities" include, without limitation, all instrumentalities associated with mapping and/or reducing functionalities, merging and/or joining data having different schemas, and any other similar functionality and all instrumentalities related to how data is received, input, stored, organized, partitioned, accessed, analyzed, delivered, processed, and transformed into outputs. This includes the data analytics systems utilizing, at least in part, Apache Hadoop, Hive, Spark, Teradata Vantage, and/or similar functionality. The Accused Instrumentalities that perform and/or embody the functionalities and features discussed and particularly described and claimed in the '610 patent and Exhibit A hereto are referred to as the "Accused AA Data Analytics Instrumentalities."

(Dkt. #40, Exhibit 13). At some point after it served its infringement contentions on American, R2 learned that the source code related to American's use of Teradata Vantage is held by Teradata rather than American, and R2 is currently seeking discovery directly from Teradata in the United States District Court for the Southern District of California (Dkt. #66).

As to its requests for discovery from American, R2 contends that American has been less than forthcoming (Dkt. #34 at p. 4). The Court held a hearing on the parties' discovery disputes on January 20, 2023, in which it granted R2 permission to file a motion to compel (Dkt. #38 at p. 6). R2 filed its motion to compel on February 3, 2023 (Dkt. #34). American responded on February 17, 2023 (Dkt. #40). R2 replied on February 24, 2023, and American filed its sur-reply one week later (Dkt. #47).

Because the parties resolved several of the issues raised in R2's initial motion without the Court's intervention, the Court directed the parties to file a joint notice identifying the remaining issues on May 23, 2023 (Dkt. #67). The parties filed a joint notice on May 26, 2023 (Dkt. #68).

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1).

The Court's scheduling order requires that the parties produce, as part of their initial disclosure, "all documents, electronically stored information, witness statements, and tangible things in the possession, custody, or control of the disclosing party that are relevant to the claim or defense of any party" (Dkt. #20 at p. 5). Moreover, the Local Rules of the Eastern District of Texas ("Local Rules") provide further guidance, indicating that information is "relevant to any party's claim or defense [if]: (1) it includes information that would not support the disclosing parties' contentions; . . . (4) it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense." LOCAL RULE CV-26(d). It is well established that "control of discovery is committed to the sound discretion of the trial court." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (quoting *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987)).

Rule 37 of the Federal Rules of Civil Procedure allows a discovering party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1). The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence. *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006). Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden

shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted. *Id.*

Federal Rule of Civil Procedure 34 governs requests for production of documents, electronically stored information, and tangible things. Rule 34 requires responses to "either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B). "An objection [to the entire request] must state whether any responsive materials are being withheld on the basis of that objection." FED. R. CIV. P. 34(b)(2)(C). On the other hand, "[a]n objection to part of a request must specify the part and permit inspection of the rest." FED. R. CIV. P. 34(b)(2)(C).

After responding to each request with specificity, the responding attorney must sign their request, response, or objection, certifying that the response is complete and correct to the best of the attorney's knowledge and that any objection is consistent with the rules and warranted by existing law or a non-frivolous argument for changing the law. FED. R. CIV. P. 26(g). This rule "simply requires that the attorney make a reasonable inquiry into the factual basis of his response, request, or objection." FED. R. CIV. P. 26(g) advisory committee's note to 1983 amendment.

The Federal Rules of Civil Procedure follow a proportionality standard for discovery. FED. R. CIV. P. 26(b)(1). Under this requirement, the burden falls on courts and parties to consider the proportionality of all discovery in resolving discovery disputes. FED. R. CIV. P. 26(b)(1) advisory committee's note to 2015 amendment. This rule relies on the fact that each party has a unique understanding of the proportionality to bear on the particular issue. *Id.* For example, a party requesting discovery may have little information about the burden or expense of responding. *Id.* "The party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination." *Id.*

# ANALYSIS

The parties have identified three discovery disputes that remain ripe for the Court's review. First, R2 seeks source code for what R2 refers to as American's "production systems" and its "Python application," both of which are, according to R2, within the ambit of the Accused Data Analytics Systems (Dkt. #68 at p. 2; Dkt. #34 at p. 7). Second, R2 seeks technical documents for both the Accused Data Analytics Systems and the Accused Search Systems (Dkt. #68 at p. 2; Dkt. #34 at p. 12). Third, R2 seeks supplemented responses to several of its interrogatories (Dkt. #68 at p. 2; Dkt. #34 at p. 13). R2 also asks the Court to order monetary sanctions against American for alleged discovery misconduct (Dkt. #68 at p. 2; Dkt. #34 at p. 15). The Court addresses each of these issues in turn.

**I.    Source Code Production**

R2 has failed to show that it is presently entitled to any additional source code production beyond that which American has already produced and the third-party source code that R2 has requested from Teradata. R2 asks the Court to order American to produce source code relevant to its "production systems" and a "Python application" that R2 identified for the first time in its reply in support of its motion to compel (Dkt. #68 at p. 2). American argues that these requests fall outside the bounds of discovery set by R2's infringement contentions (Dkt. #68 at p. 9).

Infringement contentions serve the critical function of defining the scope of discovery and narrowing the issues in patent litigation. *See Semcon IP Inc. v. ZTE Corp.*, No. 2:16-CV-00437, 2018 WL 4501808, at *2 (E.D. Tex. Feb. 28, 2018) (citing *Connectel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 526 (E.D. Tex. 2005). To this end, Patent Local Rule 3-1 ("P.R. 3-1) requires a patentee claiming infringement to identify each accused instrumentality—in a manner that is "as specific as possible"—at the outset of the case. *See* P.R. 3-1(b). Under Rule 3.1(b), "[e]ach

product, device, and apparatus must be identified by name or model number, if known." *Id.* In essence, this rule requires a patentee to lay out its theories of infringement at the outset of the case, using all publicly available information, and with enough specificity to "give an alleged infringer notice of the patentee's claims." *Linex Techs., Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 706 (E.D. Tex. 2008). As the Federal Circuit has noted, the ultimate purpose of this requirement is to require parties to "crystallize their theories of the case early in the litigation so as to prevent the shifting sands' approach" to patent litigation. *Keranos, LLC v. Silicon Storage Tech., Inc.*, 797 F.3d 1025, 1035 (Fed. Cir. 2015) (discussing P.R. 3-1) (cleaned up). If a patentee wishes to add additional products to its infringement contentions, it must seek leave of court. *Id.*

R2 has not yet identified any "production systems" or a "Python application" in its infringement contentions. To be sure, R2 has identified several accused instrumentalities, including "data analytics systems utilizing, at least in part, Apache Hadoop, Hive, Spark, Teradata Vantage, and/or similar functionality" (Dkt. #40, Exhibit 13). But R2 makes no attempt to explain how American's "production systems" and "Python application" fall within those accused instrumentalities as they are currently defined. And, although R2 allegedly did not learn of American's Python application until after discovery was underway, this discovery does not give R2 license to employ the "shifting sands' approach" to litigation that the Patent Local Rules are designed to prevent. *See Keranos*, 797 F.3d at 1035. Indeed, when a patentee learns of previously unknown instrumentalities through discovery, it should seek leave to amend its infringement contentions. *Id.* After all, "[i]f the parties were not required to amend their contentions promptly after discovering new information, the contentions requirement would be virtually meaningless as a mechanism for shaping the conduct of discovery and trial preparation." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006).

With this in mind, the Court will deny R2's motion to compel additional source code for American's "production systems" and its "Python application" at this time. Of course, R2 may seek discovery into these instrumentalities after it first obtains leave to amend its infringement contentions.[2]

## II. Technical Documents

As to its second request, R2 is entitled to any yet un-produced technical documents related to the operation of American's Teradata-based systems and its website search functionalities. R2 specifically seeks all technical documents "sufficient to show the operation of any aspects or elements of the [American's] Teradata-based systems and [American's] website search functionality" (Dkt. #68 at p. 4). For its part, American does not dispute that these documents are relevant, but, rather, it argues that R2's request is not properly before the Court and that it has already turned over all technical documents sought by R2 (Dkt. #68 at p. 7).

The Court concludes that this issue is properly before the Court and that the technical documents sought by R2 are relevant to this case. *See* P.R. 3-4(a) (requiring a party opposing a claim of patent infringement to provide "documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality"). Of course, the Court cannot compel a party to produce materials that do not exist. Nor can it compel a party to produce documents outside of its custody, possession, or control. *See* FED. R. CIV. P. 34(a) ("A party may serve on any other party a request . . . to produce . . . the following items in the responding party's *possession, custody, or control* . . . .") (emphasis added).

---

[2] R2 has previously indicated that it "certainly" intends to amend its infringement contentions (Dkt. #34 at p. 13), while American has indicated that it will oppose any attempted amendment (Dkt. #40 at pp. 17–18). To be clear, the Court offers no opinion on R2's ability to show good cause to amend its contentions, as this issue is not properly before the Court.

Thus, the Court orders American to produce or make available to R2 all yet unproduced technical documents sufficient to show the operation of any aspect or elements of its Teradata-based data analytics systems and its website search functionality that are in its possession. To the extent that American contends that it has no technical documents to produce, it must indicate to R2 whether it lacks possession, control, or custody of the documents, or alternatively, whether the requested documents do not exist or have already been produced. *See Bevill v. City of Quitman, Tex.*, No. 4:19-CV-00406, 2022 WL 14318439, at *7 (E.D. Tex. Oct. 24, 2022) (directing a party to provide supplemental responses to a request for production or otherwise provide the requesting party with an explanation for its inability to produce responsive documents).

### III.    Interrogatory Responses

Likewise, R2 is entitled to fulsome responses to its interrogatories. R2 specifically asks the Court to compel American to supplement its responses to Interrogatories 2, 3, 4, 7, 8, 10, and 13 (Dkt. #68 at p. 5). American argues that this request is not properly before the Court and that, in any event, supplementation is unnecessary (Dkt. #68 at p. 7). American objects to these interrogatories on the grounds that R2's infringement contentions are inadequate and that the interrogatories are overly vague and burdensome (Dkt. #34, Exhibit 7 at pp. 5–13).

As an initial matter, American has not met its burden of showing that the interrogatories at issue are unduly burdensome. *See, e.g., CyWee Grp. Ltd. v. Samsung Elecs. Co.*, No. 2:17-CV-00140, 2018 WL 4112055, at *2 (E.D. Tex. Jan. 24, 2018) (noting that a party seeking to resist discovery on these grounds still bears the burden of making a specific objection and showing that the discovery fails the proportionality calculation mandated by FED. R. CIV. P. 26(b)). And, although American argues that R2's infringement contentions are unclear, it has acknowledged that its use of Teradata Vantage on Microsoft Azure and the Switchfly platform for

8

AAVacations.com are accused (Dkt. #68 at p. 5). This means that, at minimum, American can provide complete responses to R2's Interrogatories 2, 3, 4, 7, 8, 10, and 13 based on the documents and knowledge in its possession relating to Teradata Vantage and Switchfly. And so, the Court will grant R2's motion to compel as it relates to American's interrogatory responses.

**IV.     Sanctions**

Finally, the Court finds that monetary sanctions are not warranted here. R2 asks the Court to order American to pay $12,549.52 for costs incurred by R2's expert in attempting to review American's source code in December 2022 (Dkt. #68 at p. 4). According to R2, American misrepresented the scope of the source code that was actually made available to R2's expert, and it provided no source code for AA.com (Dkt. #34 at p. 15). American counters that R2's complaints about the December 2020 source code production arise from a misunderstanding, and it points out that R2's expert has acknowledged that some of the source code made available to him does, in fact, go to AA.com (Dkt. #40 at p. 18).

Federal Rule of Civil Procedure 37 authorizes the Court to issue sanctions for a party's failure to comply with discovery orders. *See* FED. R. CIV. P. 37(b)(2)(A), (C). "Rule 37 sanctions must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763–64 (1980) (alteration in original) (citation omitted). The decision to sanction a litigant under Rule 37 is not unique to patent law, so Fifth Circuit law applies. *ClearValue, Inc. v. Pearl River Polymers*, Inc., 560 F.3d 1291, 1304 (Fed. Cir. 2009) ("A decision to sanction a litigant pursuant to FED. R. CIV. P. 37 is one that is not unique to patent law, and we therefore apply the regional circuit law to that issue") (cleaned up). The Fifth Circuit requires Rule 37 sanctions to be "just and fair." *Chilcutt v. U.S.*, 4 F.3d 1313,

9

1321 (5th Cir. 1993). To be "just and fair," a sanction under Rule 37 must be supported by a finding that the party acted in bad faith. *Innovation Scis., LLC v. Amazon.com, Inc.*, No. 4:18-CV-00474, 2020 WL 4431875, at *2 (E.D. Tex. July 31, 2020) (citing *Tech Pharmacy Servs., LLC v. Alixa RX LLC*, No. 4:15-CV-00766, 2017 WL 3394118 at *3 (E.D. Tex. Aug. 7, 2017). Ultimately, in imposing sanctions under Rule 37, the Court must "hold the scales of justice even." *Guidry v. Cont'l Oil Co.*, 640 F.2d 523, 533 (5th Cir. 1981).

R2 has not established that the imposition of sanctions would balance the scales of justice here. Indeed, the core of R2's claim for sanctions hinges on its expert's claim that the source code made available to him December 2020 was insufficient with respect to AAVacations.com and non-existent with respect to AA.com (Dkt. #34 at p. 15). But R2's expert has also acknowledged that American did provide source code related to both AA.com and AAVacations.com (Dkt. #34, Exhibit 14 ¶ 8). Moreover, as American points out, it has made subsequent efforts to understand R2's complaints stemming from the source code review (Dkt. #40, Exhibit 21). And, at bottom, American contends that it produced all AA.com and AAVacations.com in its possession (Dkt. #40 at p. 18).

Given these facts, the Court is not convinced that specific finding of bad faith is warranted. Although the parties' communications surrounding source code production have not been a model of clarity, R2 has not presented any facts indicating bad faith on American's part. *See Tech Pharmacy*, 2017 WL 3394118, at *3 (declining to impose sanctions under Rule 37 when party was negligent). Rather, the parties' dispute regarding American's source code production appears to be, at least in part, the result of a shared misunderstanding. In these circumstances, the imposition of sanctions would certainly not "balance the scales of justice." *Innovations Scis.*, 2020 WL

4431875, at *4 ("When a movant is itself at fault for the same or similar misconduct it charges against a non-movant, the movant's basis for sanctions is weakened").

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Motion to Compel Discovery (Dkt. #34) is **GRANTED in part** and **DENIED in part**.

It is further **ORDERED** that American shall produce all yet un-produced technical documents sufficient to show the operation of any aspect or elements of its Teradata-based data analytics systems and its website search functionality or otherwise provide R2 with detailed responses explaining whether the documents exist or whether American does not have possession, custody, or control of the documents within fourteen (14) days from the date of this Order.

It is further **ORDERED** that American shall supplement its responses to R2's Interrogatories 2, 3, 4, 7, 8, 10, and 13 based on the documents and knowledge in its possession relating to Teradata Vantage and Switchfly within fourteen (14) days from the date of this Order.

It is further **ORDERED** that Plaintiff's Motion to Compel is, in all other respects, **DENIED.**

**IT IS SO ORDERED.**

**SIGNED this 9th day of June, 2023.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE